[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 16, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-15491
Non-Argument Calendar

_____

BIA No. A78-953-672

ISABEL CRISTINA FLORES-ANDINO,
JEIMY LIZETH SABILLON-FLORES,
EDSON SABILLON-FLORES,
MAYDI GISSEL SABILLON-FLORES,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(July 16,  2008)**

Before TJOFLAT, ANDERSON and BLACK, Circuit Judges.

PER CURIAM:

Isabel Flores-Andino, Jeimy Sabillon-Flores, Edson Sabillon-Flores, and Maydi Sabillon-Flores ("Flores-Andino"),[1] citizens of Honduras, through counsel, seek review of the Board of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") order finding them removable and denying their application for asylum and withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, and Degrading Treatment or Punishment ("CAT"), INA §§ 208, 241, 8 U.S.C. §§ 1158, 1231; 8 C.F.R. § 208.16(c).

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). Here, because the BIA issued a decision that expressly adopted the IJ's reasoning on the withholding of removal claim, we review the IJ's decision, as well as the additional findings the BIA made.

## I. Asylum

On appeal, Flores-Andino argues that the BIA erred in finding that her application for asylum was time-barred. The government responds that we lack jurisdiction over the asylum claim.

We review our subject-matter jurisdiction de novo. Brooks v. Ashcroft, 283

---

[1]Almost all incidents underlying petitioners' claims for relief relate solely to the lead petitioner, Flores-Andino.

F.3d 1268, 1272 (11th Cir. 2002). An alien can apply for asylum if she "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B). However, "[a]n [untimely] application for asylum of an alien may be considered . . . if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified . . . ." INA § 208(a)(2)(D), 8 U.S.C. § 1158(a)(2)(D).

Notwithstanding the BIA's authority to consider an untimely asylum application in circumstances where the applicant meets one of the exceptions to the one-year deadline, "no court shall have jurisdiction to review any determination of the Attorney General under [section 1158(a)(2)]." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1286-87 (11th Cir. 2003) (quoting INA § 208(a)(3), 8 U.S.C. § 1158(a)(3)) (alteration in original). We have held that § 1158(a)(3) divests us of jurisdiction to review the BIA's determinations that an asylum applicant filed an untimely application and failed to establish changed or extraordinary circumstances to excuse his untimely filing. Mendoza, 327 F.3d at 1287. We have also held that the jurisdictional provisions in the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, 310 (2005), did not alter our jurisdiction over this

3

matter.  <u>Delgado v. U.S. Att'y Gen.</u>, 487 F.3d 855, 860 (11th Cir. 2007) (citation omitted).

Here, the BIA determined that Flores-Andino's asylum application was untimely and that she had failed to establish changed or extraordinary circumstances to excuse their untimeliness.  Therefore, we lack jurisdiction to consider whether the BIA erred in this regard.  Accordingly, we dismiss her petition for review as to her claim for asylum.

## II. Withholding of Removal

Flores-Andino argues that she was being persecuted due to political opinion because she was being harassed and persecuted by a military official, who was not being restrained by his government.  She argues that after she rejected the official, her house was ransacked and burned down, her children began having trouble with the gangs, and her father was arrested for kidnaping and his face was slashed.  She argues that she was driven from Honduras by his threats.  Flores-Andino also argues that the gang violence does not constitute merely general crime in Honduras, and the gangs' presence is country-wide.  She maintains that she has reason to fear future persecution in Honduras because the gangs and the official are still in the country, and they will persecute her based on an imputed opinion that she opposes the official and the gangs. She also argues that she fears future persecution because she is a member of a "group of women who are subject to

4

violence, and [were] persecuted for not taking the advance[s] of a military official, and persecuted by gangs who were trying to take her children."

Flores-Andino also argues that the BIA's decision should be reversed in light of Mejia v. U.S. Att'y. General, 498 F.3d 1253 (11th Cir. 2007), and Sanchez-Jimenez v. U.S. Att'y. General, 492 F.3d 1223, 1233-34 (11th Cir. 2007), both holding that physical harm is not a prerequisite for a finding of past persecution, and Ruiz v. Gonzales, 479 F.3d 762 (11th Cir. 2007), holding that the BIA must consider the "cumulative impact of the mistreatment" suffered by a petitioner.

To the extent that the BIA's decision was based on a legal determination, our review is de novo. Delgado, 487 F.3d at 860. The BIA's factual determinations are reviewed under the substantial evidence test, and we "must affirm the BIA's decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Sanchez Jimenez, 492 F.3d at 1230. The substantial evidence test is "highly deferential" and does not allow "re-weigh[ing] the evidence from scratch." Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006) (quotation and citation omitted). "To reverse the [BIA's] fact findings, we must find that the record not only supports reversal, but compels it." Mendoza, 327 F.3d at 1287.

An alien seeking withholding of removal under the INA must show that her "life or freedom would be threatened in that country because of [her] race, religion,

5

nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). The alien must show that it is "more likely than not that she will be persecuted or tortured upon being returned to her country." Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1232 (11th Cir. 2005). We have explained that this burden of proof is "more stringent" than the burden to establish asylum eligibility. Id. Furthermore, while the INA does not define persecution, we recognize that "'persecution' is an 'extreme concept,' requiring 'more than a few isolated incidents of verbal harassment or intimidation,' and that '[m]ere harassment does not amount to persecution.'" Id. at 1231 (citation omitted).

An alien must demonstrate a nexus between her past persecution and one of the five protected grounds, not just that she was persecuted for not cooperating with her persecutors. See Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004). "Demonstrating such a connection requires the alien to present 'specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution' on account of such an opinion." Al Najjar, 257 F.3d at 1287. An alien may sustain her burden of proof by showing a pattern or practice of persecution of a group similarly situated to her in which she is included or with which she is identified. 8 C.F.R. § 208.16(b)(2)(i, ii). Evidence that is indicative of "private violence . . . or that merely shows that a person has been the victim of criminal

6

activity does not constitute evidence of persecution based on a statutorily protected ground." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006).

"Persecution on account of . . . political opinion . . . is persecution on account of the victim's political opinion, not the persecutor's." INS v. Elias-Zacarias, 502 U.S. 478, 482, 112 S.Ct. 812, 816, 117 L.Ed.2d 38 (1992) (quotations omitted, emphasis in original). We have held that "[a]n imputed political opinion, whether correctly or incorrectly attributed, may constitute a ground for a well-founded fear of political persecution within the meaning of the INA." Al Najjar, 257 F.3d at 1289 (quotations omitted) (applied to asylum proceeding). "An asylum applicant may prevail on a theory of imputed political opinion if [she] shows that the persecutor falsely attributed an opinion to [her], and then persecuted [her] because of that mistaken belief about [her] views." Id. (quotations omitted).

The BIA has defined "persecution on account of membership in a particular social group" as "persecution that is directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic . . . that either is beyond the power of an individual to change or that is so fundamental to his identity or conscience that it ought not be required to be changed." Matter of Acosta, 19 I. & N. Dec. 211, 233-34 (BIA 1985), overruled on other grounds by Matter of Mogharrabi, 19 I. & N. Dec. 439 (BIA 1987); see

7

also Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1196-97 (11th Cir. 2006) (holding BIA's definition reasonable), cert. denied, 127 S.Ct. 977 (2007). We have noted that the phrase "'particular social group' should not be a 'catch all' for all persons alleging persecution who do not fit elsewhere." Castillo-Arias, 446 F.3d at 1198. We acknowledged "concerns" when a proposed social group is "potentially too numerous and inchoate." Id.

If an alien has not shown past persecution, she still may be entitled to withholding of removal if she "establishes 'that it is more likely than not that she would be persecuted on account of race, religion, nationality, membership in a particular social group, or political opinion upon removal to that country.'" Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1375 (11th Cir. 2006)(quoting 8 C.F.R. § 208.16(b)(2)). "An alien cannot demonstrate that [she] more-likely-than-not would be persecuted on a protected ground if the [BIA] finds that the alien could avoid a future threat by relocating to another part of [her] country." Mendoza, 327 F.3d at 1287. Evidence that a petitioner has relatives living unharmed in the home country diminishes a well-founded fear claim. See Ruiz, 440 F.3d at 1259 (in the context of an asylum claim).

Substantial evidence supports the IJ's determination that Flores-Andino had not suffered past persecution and had not established a likelihood of future persecution on account of a protected ground because the mistreatment she

8

suffered in the past or might suffer in the future is not related to any protected ground, because it was based on private violence and general crime in Honduras. Therefore the BIA and IJ properly found that Flores-Andino was not entitled to withholding of removal.

### III. CAT Relief

Flores-Andino argues that she is eligible for CAT relief because "the Colombian government is unable to protect him (sic) from the FARC."[2] The government responds that we do not have jurisdiction to review the BIA's denial of Flores-Andino's request for protection under the CAT because her appeal to the BIA did not challenge the IJ's denial of CAT relief and therefore she has failed to exhaust her administrative remedies. Alternatively, the government maintains that Flores-Andino has waived any challenge to the denial of her claim for relief under the CAT because she failed to argue the issue on appeal in that she did not offer any applicable analysis in her argument.

We review our subject matter jurisdiction de novo. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006). We "lack[] jurisdiction to consider a claim raised in a petition for review unless the petitioner has exhausted

---

[2]This analysis appears to have been included in error, referencing matters related to another party and unrelated to Flores-Andino or her children, who are from Honduras. There is no mention of Colombia or "FARC" in the administrative record or in the facts as described by Flores-Andino.

9

[her] administrative remedies with respect thereto." Id.; 8 U.S.C. § 1252(d)(1). When a petitioner fails to raise an argument in either her notice of appeal or brief before the BIA, the petitioner has failed to exhaust her administrative remedies, and we do not have jurisdiction to consider the claim in the petition for review even when the BIA addresses the issue sua sponte. Id. at 150-51.

When a petitioner fails to offer argument on an issue in her opening brief, that issue is abandoned. See Sepulveda, 401 F.3d at 1228 n.2. The Fifth Circuit has held that a court will not consider an issue on appeal where an appellant simply states familiar, applicable law without providing corresponding argument. Brinkmann v. Abner, 813 F.2d 744, 748 (5th Cir. 1987) (summary judgment context).

Eligibility for relief under the CAT is established where an applicant shows that "it is more likely than not that she will be tortured in her home country at the hands of her government or that her government will acquiesce in the torture." Sanchez v. U.S. Att'y Gen., 392 F.3d 434, 438 (11th Cir. 2004); see also 8 C.F.R. §§ 208.16(c)(2), 208.18(a)(1). Torture is defined as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or

suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). "Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 208.18(a)(2). To constitute torture, "an act must be specifically intended to inflict severe physical or mental pain or suffering. An act that results in unanticipated or unintended severity of pain and suffering is not torture." 8 C.F.R. § 208.18(a)(5). Relief under the CAT carries a higher legal standard than asylum, and is therefore very difficult to meet. Al Najjar, 257 F.3d at 1303. Pursuant to 8 C.F.R. § 208.16(c)(3)(i), evidence of past torture is relevant in determining the likelihood of future torture.

Flores-Andino exhausted her administrative remedies because she mentioned her fear of torture in her personal statement attached to her appeal and the BIA addressed the issue of torture and CAT relief in its opinion. Although Flores-Andino only quoted applicable law in her brief without providing any applicable argument, we need not decide whether to apply the Fifth Circuit's holding in Brinkmann because her CAT claim fails.

In this case, substantial evidence supported the IJ's finding that Flores-Andino failed to prove that she would more likely than not be tortured by the

11

government or with the government's acquiescence upon being removed to Honduras. Accordingly we deny her petition for relief under the CAT.

**DISMISSED IN PART, DENIED IN PART.**